IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PAUL VINCENT ANDREOZZI,

        Plaintiff,

v.                                  Civil Action No. 5:05CV83
                                             (STAMP)

BROOKE COUNTY COMMISSION and
BROOKE COUNTY SHERIFF'S DEPARTMENT,
West Virginia political subdivisions
and KEVIN L. HECK, individually and
in his capacity as agent and employee
of Brooke County Commission and/or
Brooke County Sheriff's Department,

        Defendants.


**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.  Procedural History

On June 13, 2005, the plaintiff, Paul Vincent Andreozzi, filed a complaint in this Court against the defendants, Brooke County Commission, Brooke County Sheriff's Department and Kevin L. Heck ("Officer Heck"), alleging that the defendants violated his civil rights pursuant to 42 U.S.C. § 1983. The complaint also includes claims for intentional infliction of emotional distress (also known as the tort of outrage), battery, negligent retention and hiring and false imprisonment. On December 5, 2005, this Court entered a memorandum opinion and order granting the defendants' motion to dismiss Count II of the complaint, which asserts a claim for intentional infliction of emotional distress.

On May 14, 2007, the defendants filed a motion for summary judgment, to which the plaintiff responded and the defendants' replied.

After considering the defendants' motion for summary judgment and the response and reply thereto, this Court finds that the defendants' motion for summary judgment must be granted.

## II. <u>Facts</u>

This case arises out of a warrantless arrest of the plaintiff at 2159 Eldersville Road in Brooke County, West Virginia.

On or about June 13, 2003, Officer Heck and Captain John J. Eckersberg ("Eckersberg") were on duty and acting on behalf of the Brooke County Sheriff's Department. Officer Heck and Captain Eckersberg responded to a telephone call placed by a third party, Larry Martin ("Martin"), who identified himself as a neighbor to the residence at 2159 Eldersville Road. Mr. Martin called 911 because he was concerned about the plaintiff's allegedly erratic driving. The defendants assert that Mr. Martin told 911 that there "was a truck that may have been stuck in a ditch, spinning gravel or may have wrecked on Eldersville Road." (Defs.' Mot. for Summ. J. at 3.) Upon arrival, the officers found the plaintiff laying down across the front seat of a Chevy S10 pickup truck parked at 2159 Eldersville Road. The officers approached the vehicle and, upon seeing the plaintiff, requested his license and registration.[1]

_____

[1]Defendants assert that the plaintiff's windows were rolled down when they approached the vehicle.

Officer Heck then asked the plaintiff if he had been drinking. Plaintiff asserts that he does not remember whether he answered "yes" or "no." Officer Heck contends that the plaintiff told him that he was drinking that night. Officer Heck then directed the plaintiff to exit the vehicle and asked him to perform a horizontal gaze nystagmus ("HGN") field sobriety test. Plaintiff failed the HGN field sobriety test and refused to take a breathalyzer test as requested by Officer Heck. Captain Eckersberg contends that the plaintiff had an unsteady balance and that he fumbled for his driver's license and registration. Further, Captain Eckersberg asserts that the plaintiff had poor coordination and glassy and bloodshot eyes.

Plaintiff was arrested for the offense of driving under the influence of alcohol ("DUI"), first offense, pursuant to West Virginia Code § 17C-5-2. Plaintiff asserts that he was battered by Officer Heck when he was taken into custody. Specifically, plaintiff asserts that the "battery includes, but is not limited to placing the handcuffs too tightly on his wrist." (Compl. ¶ 13 at 4.) On July 31, 2003, plaintiff was discharged from any criminal liability.

In his complaint, the plaintiff seeks damages for his injuries, exemplary damages and attorney's fees and costs.

### III. Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992)(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250; <u>see also</u> <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not

desirable to clarify the application of the law." (citing <u>Stevens</u> <u>v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950))).

In <u>Celotex</u>, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page</u> <u>Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith</u> <u>Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## IV. <u>Discussion</u>

In their motion for summary judgment, the defendants argue that: (1) a police officer does not need to see the person drive to investigate and ultimately arrest someone for a DUI under West Virginia Code § 17C-5A-1A(a); (2) sufficient probable cause existed for making the arrest under West Virginia law; and (3) the plaintiff has no claim for battery. In response, the plaintiff asserts that the defendants did not have reasonable suspicion justifying further investigation after they had arrived on scene in response to an anonymous tip, observed no evidence of criminal

conduct, and could identify no exigent circumstances warranting the initiation of an encounter with the plaintiff. Plaintiff also contends that his warrantless arrest was unjustified because insufficient evidence existed to sustain a finding that the plaintiff was under the influence of alcohol at the time. Finally, the plaintiff asserts that he has set forth sufficient facts to justify the denial of summary judgment as to the claim of battery.

This Court notes that Count II of the complaint has been previously dismissed, thus, the defendants' motion for summary judgment pertains to: Count I, unreasonable search and seizure under 42 U.S.C. § 1983; Count III, battery; Count IV, negligent retention and hiring; and Count V, false imprisonment.

## A. Counts I and V: Unreasonable Search and Seizure and False Imprisonment

In his complaint, the plaintiff asserts that the defendants deprived him of his civil rights. Specifically, the plaintiff asserts that the defendants deprived him of "his Fourth Amendment right to be secure from unreasonable search and seizure and his Fourteenth Amendment right guaranteeing him equal protection of the laws and due process of the law." (Pl.'s Compl. at 19.) Plaintiff also contends that he was falsely imprisoned by Officer Heck. Specifically, the plaintiff asserts that Officer Heck, "intending to hold, restrain, and imprison Plaintiff in the absence of lawful process . . . ." caused him to suffer damages. (Pl.'s Compl. at ¶ 28.)

1.   <u>Unreasonable Search and Seizure</u>

An informant's tip may carry sufficient "indicia of reliability" to justify an investigatory stop of a vehicle pursuant to <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).   Moreover, the court in <u>Illinois v. Gates</u>, 462 U.S. 213 (1983), adopted the "totality of the circumstances" approach to determining whether an informant's tip establishes probable cause, whereby the informant's veracity, reliability and basis of knowledge are highly relevant.

Further, an arrest in violation of the Fourth Amendment gives rise to a claim for relief under § 1983.   A police officer's warrantless arrest in a public place satisfies the Fourth Amendment if the arrestee committed a crime in the officer's presence or if the officer had probable cause to believe that the arrestee committed the crime.  <u>United States v. Watson</u>, 423 U.S. 411 (1976). Probable cause exists where the facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information, are "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."  <u>Brinegar v. United States</u>, 338 U.S. 160 (1949).

West Virginia Code § 17C-5-2 states that:

(d)   Any person who:
(1)   Drives a vehicle in this states while he or she:
(A)   Is under the influence of alcohol; or
                    . . .
(2)   Is guilty of a misdemeanor and, upon conviction thereof, shall be confined in the county or regional jail for not less than one day nor more than six months, which jail term is to include actual confinement of not less than twenty-four hours, and shall be fined not less than one hundred dollars nor more than five hundred dollars.

W. Va. Code § 17C-5-2(d)(1)(A)(2).

Under West Virginia Code § 17C-5A-1A(a), a police officer does not actually need to "see or observe a person move, drive, or operate a motor vehicle while the officer is physically present before the officer can charge that person with DUI under this statute, so long as all the surrounding circumstances indicate the vehicle could not otherwise be located where it is unless it is driven there by that person." State v. Davisson, 547 S.E.2d 241, Syl. Pt. 2 (W. Va. 2001).

In this civil action, it is clear that the police had reasonable suspicion to perform an investigatory search and had probable cause to make an arrest. This Court finds that the totality of the circumstances demonstrates that the informant's statements from his 911 telephone call were sufficiently corroborated by the police to furnish reasonable suspicion to investigate the plaintiff's vehicle.

In response to the 911 telephone call, the police responded to 2159 Eldersville Road. Once at 2159 Eldersville Road, the officers found gravel in the roadway and tracks that led up the driveway to the plaintiff's vehicle.[2] The responding officers found the plaintiff laying down on the front seat of his truck. They smelled the odor of alcohol emanating from the plaintiff. Plaintiff admits that he consumed alcoholic beverages that night. (Pl.'s Resp. to

---

[2]These facts were described by Mr. Martin and were sufficiently corroborated by Officer Heck and Captain Eckersberg.

8

Defs.' Mot. for Summ. J. at 8.)  Then, Officer Heck asked the plaintiff to perform a horizontal gaze nystagmus test, which he failed.  Captain Eckersberg noted that the plaintiff had an unsteady balance and that he fumbled for his driver's license and registration.  Finally, the officers noted that the plaintiff had poor coordination and glassy and bloodshot eyes.  When asked if he would take the breathalyzer test, the plaintiff refused.

Plaintiff asserts that these "variables provide no basis to form probable cause to arrest for DUI." (Pl.'s Resp. at 8.) Plaintiff discusses each piece of evidence stated above separately to form his opinion that the defendants' lacked probable cause to arrest the plaintiff.  This Court notes that it must determine if probable cause existed at the time of the arrest based upon all of the circumstances.  See Davisson, 547 S.E.2d at 241.  This Court finds that the evidence set forth above supports a finding of probable cause that the plaintiff was intoxicated.  See Coffman v. W. Va. Div. of Motor Vehicles, 551 S.E.2d 658, 660 (W. Va. 2001) (physical signs indicative of intoxication include "glassy and bloodshot eyes, slurred speech, and unsteadiness while standing and walking").

Further, the plaintiff states that "West Virginia law does not permit the admission of horizontal gaze nystagmus ("HGN") evidence as substantive evidence of intoxication, without the reliability of the HGN evidence being shown." (Pl's Resp. at 8.)  This Court notes that this opinion was written by Justice Starcher in a

concurring opinion in State v. Dilliner, 569 S.E.2d 211, 218 (W. Va. 2002). In that opinion, Justice Starcher further states that the purpose of HGN evidence is "to provide a basis for police officers in deciding whether they have probable cause to make an arrest." For this reason, this Court finds that the plaintiff's assertions regarding the HGN field sobriety test lack merit.

Based upon the evidence stated above, this Court finds that probable cause existed to support the defendants' belief that the plaintiff was committing a crime under West Virginia law. See W. Va. Code §§ 17C-5-2 and 17C-5A-1A(a).

2. False Imprisonment

While the defendants request summary judgment on all of the plaintiff's claims, they do not expressly discuss the plaintiff's false imprisonment claim in their motion for summary judgment. After a review of the record, this Court finds that it must grant summary judgment in favor of the defendants on plaintiff's claim for false imprisonment.

Claims of false arrest and false imprisonment may be defeated by showing a sufficient legal excuse, probable cause, to restrain the plaintiff's liberty. See Blackburn v. Town of Coeburn, WL 1597506, slip op. (W.D. Va. June 1, 2007). Because this Court found above that the defendants had probable cause to believe the plaintiff violated West Virginia Code § 17C-5-2, the plaintiff's claim for false imprisonment must fail.

Accordingly, this Court finds that the defendants are entitled to summary judgment to the extent that it pertains to the plaintiff's claims under Count I, 42 U.S.C. § 1983 and Count V, false imprisonment.

B.    Count III: Battery

In his complaint, the plaintiff asserts that Officer "Heck battered him, including, but not limited to, placing handcuffs too tightly upon his wrists." (Pl.'s Compl. ¶ 13.)  Upon a review of the plaintiff's complaint and his response to the defendants' motion for summary judgment, the plaintiff asserts that he was handcuffed too tightly, which resulted in discomfort to the plaintiff.  Plaintiff does not allege or offer proof of any lasting or serious injury resulting from the use of the handcuffs.

In Cooper v. City of Virginia Beach, 817 F. Supp. 1310 (E.D. Va. 1993), the court held that the "[u]se of handcuffs during arrest for driving under the influence was not excessive force for purposes of arrestee's § 1983 claim, even though handcuffs were so tight that arrestee's hands almost immediately became numb . . . ."

In this civil action, the plaintiff does not allege any injuries from the handcuffs being too tight on his wrists.  Thus, this Court finds that Officer Heck did not use excessive force against the plaintiff.  Accordingly, the defendants are entitled to summary judgment to the extent that it pertains to the plaintiff's Count III battery claim.

C.   Count IV: Negligent Retention and Hiring

In his complaint, the plaintiff claims that the defendants negligently hired and retained Officer Heck and "should have known of his proclivity and predisposition to violence, excessive force, acting in excess of his lawful jurisdiction, abusiveness, and intemperance . . . ." (Pl.'s Compl. ¶ 26.)

An employer who negligently hires or retains in his employment an individual who is incompetent or unfit for the job, may be liable to a third party whose injury was proximately caused by the employer's negligence.  See e.g. McCormick v. W. Va. Dept. of Public Safety, 503 S.E.2d 502 (W. Va. 1998).  Comment e to the Restatement (Second) of Agency § 213 states that "[o]ne who engages in an enterprise must take care to see that all the instrumentalities, human or mechanical, which he uses are such as are not likely to cause harm to third persons."

As stated in McCormick, 503 S.E.2d at 507,

> [A] primary question in determining whether an employer may be held liable, based on a theory of negligent hiring or retention, is the nature of the employee's job assignment, duties and responsibilities - with the employer's duty with respect to hiring or retaining an employee increasing, as the risks to third persons associated with the particular job increase.

See e.g. Ponticas v. K.M.S. Investments, 331 N.W.2d 907, 913 (Minn. 1983).

In order to be liable for negligent hiring, an employer must have "actual or constructive knowledge of the employee's propensity to commit a later act of violence." Moore v. Hosier, 43 F. Supp.

2d 978 (N.D. Ind. 1988)(quoting <u>Frye v. Am. Painting Co.</u>, 642 N.E.2d 995 (Ind. App. 1994)).

The plaintiff does not provide any evidence that the Brooke County Sheriff's Department had knowledge of any current propensity for violence by Officer Heck. Further, the plaintiff does not provide any evidence that Officer Heck was incompetent or unfit for his job as a police officer. The plaintiff bases his claim for negligent hiring and retention on his assertion that Officer Heck used excessive force against him; however, this Court found above that Officer Heck did not use excessive force upon the plaintiff. Accordingly, this Court finds that the defendants are entitled to summary judgment to the extent that it pertains to the plaintiff's Count IV, the defendants' negligent retention and hiring of Officer Heck.

D. <u>Qualified Immunity</u>

Defendants raise the issue of qualified immunity in their reply to their motion for summary judgment. This Court finds that this issue was raised too late and was not fully briefed by the parties. For the reasons stated above, this Court finds that there is no need to discuss the issue of qualified immunity since this Court has found that summary judgment is appropriate in favor of the defendants.

### V. Conclusion

This Court finds that the defendants, Brooke County Commission, Brooke County Sheriff's Department and Kevin Heck's motion for summary judgment is hereby GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    August 8, 2007

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE